Folden v. Hendrick.

———— ·•◦•· ————

FOLDEN, Respondent, v. HENDRICK, Appellant.

1. If a slave give a watch to his wife, who is owned by another master, a third person, who obtains possession of the watch wrongfully, will not be permitted to deny the validity of the transfer in a suit brought against him by the owner of the wife, to recover its value—the owner of the husband not objecting to the disposition made by his slave of the watch.

2. In a suit to recover the value of property wrongfully converted, it is too late to object for the first time in the Supreme Court that no demand was made.

3. The Supreme Court will not reverse a judgment for a refusal of a court to give an instruction to the effect that, "admitting all the testimony to be true, the plaintiff can not recover."

*Appeal from Greene Circuit Court.*

This was a suit commenced before a justice of the peace to recover the value of a watch alleged to have been wrongfully taken from the possession of plaintiff. Upon the trial in the

circuit court, to which the cause was taken by appeal, the plaintiff introduced the following testimony : One G. Philips, examined in behalf of plaintiff, testified, " that some time before the commencement of the suit, in the spring of 1855, he, witness, as constable, had apprehended a negro man belonging to one Huralston for supposed offences, and while the negro was in his custody a company purchased him for the purpose of carrying him off; witness understood from defendant that he went to the negro man's wife, who belonged to plaintiff, to get the negro man's clothes, and she gave them to him; witness also understood from defendant that he got the watch from the possession of plaintiff—that is, defendant told him that the negro woman handed him the watch after giving him the clothes; she gave defendant the watch as the property of the negro man, and the defendant received the watch from the negro woman to be carried to the negro man. Witness said defendant took the watch and offered it to the negro man, saying he had a watch himself and his partner ought to have one too, and asked the negro if he wanted one; but the negro man did not take the watch, and the last witness saw of the watch it was in defendant's possession. The negro woman was plaintiff's house-keeper and servant, and wife of the negro man. Plaintiff also introduced one Woodward as a witness, who testified that he saw defendant offer the watch to the negro man, but the negro man did not receive it, and the last he saw of the watch it was in defendant's possession. Witness said he saw that same watch, some time before that, in the possession of a young man, nephew of plaintiff, by the name of Stotts; that Stotts was offering to sell it, and claimed it as his own; thought the watch was worth from sixteen to eighteen dollars." . The above was all the evidence introduced.

The defendant asked the court to instruct the jury that, admitting all the testimony to be true, the plaintiff can not recover in this cause. The court refused so to instruct. The court instructed the jury " that notwithstanding Hendricks got the watch from the negro woman of Folden, yet if they

believe from the evidence that it was in Folden's possession, they ought to find for the plaintiff." The court also, at the instance of the plaintiff, gave the following instruction : "The possession of the watch by the negro woman is Folden's possession, unless it had been proved that she got possession of the watch wrongfully." The court refused the following instructions asked by defendant : " 1. Although the watch was taken from the negro woman, Folden's slave, unless Folden had possession the jury must find for the defendant ; the negro's possession is not of itself possession in Folden. 2. Unless plaintiff has proved that Stotts placed the watch in the possession, the jury are bound to find the issues in favor of the defendant. 3. There is no evidence before the jury to prove that Stott placed the watch in Folden's possession." The jury found for plaintiff.

*Morrow*, for appellant.

I. The instruction asked by the defendant at the close of plaintiff's testimony ought to have been given. There is not a tittle of proof that the plaintiff ever owned or had possession or the right to the possession of the watch. On the contrary the proof shows, *prima facie*, title to the watch in Stotts. There was no demand and refusal. (2 J. J. Marsh. 86 ; 7 Dana, 248 ; Danley v. Rector, 5 Engl. 211.) The principle of the instruction in this case would give the owner of a negro's wife the right to all the clothes, boots and blankets that the owner of the negro man might furnish him.

II. The instructions asked by plaintiff ought not to have been given, and the instructions by the defendant ought to have been given. Although the possession of the slave may for some purposes be regarded as the possession of the master, yet it can not be said that such possession is conclusive evidence of title, or even *prima facie* evidence of title, where the right to possession is in dispute. If the plaintiff had been indicted for larceny, would the possession of the watch by his slave be any evidence against him without other proof ? The court bases the whole case upon the fact that the

27—VOL. XXV.

possession of the slave is the possession of the owner of the slave, and that bare possession is conclusive evidence of title. The first instruction given by the court for plaintiff refers a matter of law to the jury.

*Wright* and *Otter*, for respondent.

I. What is earned by the slave, or otherwise rightfully belongs to the slave, belongs to the master by the common law, the civil law, and the recognized rules of property in the slave-holding states. (Law of Slavery, 229.) A master may sue for what is due his slave, and he can claim the benefit of a lawful and voluntary engagement made in favor of his slave. (Livander's heirs v. Ton et al. 8 Martin, 161; Law of Slavery, 268.) The slave, in acquiring property, acts in legal contemplation as the agent of the master. (Law of Slavery, 228; 1 Hill, 270.) It follows then as a consequence that the possession of the slave is the master's possession. (Law of Slavery, 6.) The possession of personal property is evidence of ownership, nothing appearing to the contrary; consequently the instructions for plaintiff are correct.

Scott, Judge, delivered the opinion of the court.

There is no doubt of the principle that the property of the slave belongs to his master. Whatever a slave acquires a right to, the master may sue for and recover in his own name. If a thing belonging to a slave is stolen, it must be alleged in an indictment for the felony that it was the property of the master. But while this is certainly the law, if masters do not interfere with nor object to the disposition that their slaves may make of the property which they are willing should be owned by them, it is not for strangers to interfere and deny the validity of any transfer of his property which a slave may make. The watch being the property of the negro man, he gave it to his wife. What is more natural than that a man about to be separated from his wife, should be willing to give her a portion of the property he may have? What possible inference can be drawn from the refusal of the man to re-

ceive the watch, but that it was his wish that his wife should have it? The master of the slave not objecting to this disposition of the property, who else shall gainsay its validity? These being the facts of the case, as may be inferred from what is stated in the record, it is clear that justice has been done by the judgment rendered in the court below. The wife has obtained what her husband gave her, or at least its equivalent.

This court is no place in which, for the first time, to make the objection of a want of demand. If the objection had been made in the court below, it might have been obviated. After a party has resisted a recovery against him in all the courts, from the lowest to the highest, it is with a bad grace that he appears in the court of the last resort, and for the first time makes the objection that there was no demand made of him before the institution of the suit. Such conduct looks very much like giving up the controversy.

As to the instruction refused at the close of the case, we are of opinion that it was a proper exercise of the discretion of the court to refuse it. The instruction was so general that it did not show on what point the party relied. If there was any fact not proved which was essential to a right of recovery, why was it not singled out and a direction prayed that the proof of such fact was necessary to entitle the plaintiff to a verdict? With the statute before us, which enacts that no exception shall be taken on an appeal or writ of error to any proceeding in the circuit court, except such as shall have been expressly decided by such court, we will never reverse a judgment for the refusal of so general an instruction. Under such instructions the court below might have been of the opinion that one essential fact was not proved, while this court may come to the determination that the defect of proof was not in relation to that fact, but a different one; or the court below may hold that a fact is necessary to be proved which, in the opinion of this court, is unnecessary, or that there is a variance between the proof and the petition. How, under such instructions, could this court ascertain the point

decided by the court below? Under such circumstances would not a reversal of the judgment be against the spirit of the act cited? Would it be known that the point decided by the court below is the same as that decided by this court? The law, in its anxiety to protect judgments from reversals, requires that the specific question decided below should be that on which the opinion of this court will turn; and if instructions so general in their character are countenanced, the statute will be entirely evaded. At an early day this court felt the embarrassment of instructions of so general a nature, and pointedly condemned them. (Williams v. Harrison, 3 Mo. 412.)

The second instruction asked by the defendant was intended, it is presumed, to raise a question of variance between the statement of the cause of action and the evidence. If the property was Folden's, as the evidence conduced to show, it was not material from whom it was obtained. The allegation respecting Stotts' possession must have been designed for its identification, and if it was otherwise sufficiently described, it was enough. This is is not a matter of contract. No form of pleading is required in justices' courts. No statement of the cause of action is necessary, save that which the justice is required to enter on his docket. Statements, when filed, are often very inartificial, and should be favorably construed. There is nothing in the record showing that any question was raised as to the identity of the cause of action tried in the justice's court with that tried in the circuit court. The cases of Link v. Vaughn, 17 Mo. 595, and Ferrara v. Beck, 19 Mo. 30, were actions in courts of record, and under the present practice act, which, by express provision, does not extend to justices' courts except in relation to the matter of evidence. Judge Ryland concurring, judgment affirmed.