WARWICK M. HOUGH, Assignee of Universal Saving & Loan Company, Respondent, v. AMERICAN SURETY COMPANY, of New York, Appellant.

### *Kansas City Court of Appeals, June 3, 1901.

1. **Principal and Surety: CONTRACT OF SURETY COMPANY: CONDITION PRECEDENT: EVIDENCE: DEMURRER: PLEADING.** The contract of a surety company required the employer of the principal to furnish the company such reasonable particulars and proofs of the correctness of a claim as the company "may think fit," as also every description of aid for prosecution of the principal and these were conditions precedent to the employer's recovery for every default of the principal. Upon a loss, the company required of the employer information of the particulars of every oral statement the principal made in relation to the shortage. The employer failed to give the company information of certain confessions made by the principal. These confessions were offered in evidence by the plaintiff: *Held,* plaintiff was not entitled to recover and a demurrer to his evidence should have been sustained notwithstanding the answer was a general denial.

2. ———: ———: **PLEADING: CONCEALMENT: DEMURRER.** Since the furnishing of particulars became incumbent on the employer only at the request of the company, ordinarily it should in its answer have set up the request and failure to comply therewith, but where such matters are wholly within the employer's knowledge and concealed from the company, it is not required to plead them, especially where both demand and concealment are shown for the plaintiff's own evidence and defendant may take advantage thereof by demurrer.

Appeal from Cole Circuit Court.—*Hon. Jas. E. Hazell,* Judge.

REVERSED AND REMANDED.

*This case came to Reporter's hands January 25, 1902.

*William B. Thompson* and *Ford W. Thompson* for appellant.

(1)   The contract between the plaintiff and defendant is that of principal and surety, and the surety is entitled to a strict construction of said contract in all of its parts; and wherever there is a condition precedent such condition must be performed by the plaintiff, before there can be any recovery upon the bond in this action. 24 Am. and Eng. Encyclopedia of Law, sec. 749, and cases cited.   (2)  The proof of loss sent to defendant in the letter of September 28, 1896, did not comply with the terms of the bond.   Because the plaintiff suppressed facts within its knowledge and requested by defendants of oral statements made by Murray.   May on Insurance, sec. 475; Jube v. Ins. Co., 28 Barb. (N. Y.) 412; Ins. Co. v. Mispelhorn, 50 Md. 180; O'Brien v. Ins. Co., 63 N. Y. 108; Cuming v. Ins. Co., 192 Pa. St. 359; Moore v. Ins. Co., 46 Atl. 266.   (3)  The suppression by the plaintiff of the confession of Murray, which was known to the plaintiff before the proof of loss was made, is not only in violation of the terms of the contract, but is a presumption against the plaintiff's right to recover in the action.   19 Am. and Eng. Encyclopedia of Law, 71; Rupee v. Steinback, 48 Mich. 465.

*Silver & Brown* for respondent.

(1)  Fidelity bonds are analogous to ordinary policies of insurance and are governed by the same principles of law. Bank v. Guarantee Co., 68 Fed. Rep. 459; Supreme Council, etc., v. Fidelity Co., 63 Fed. Rep. 48; American Surety Co. v. Pauly, 72 Fed. Rep. 484; American Surety Co. v. Pauly, 170 U. S. 133.   Such bonds are in the terms prescribed by the surety and any doubtful language should be construed most strongly against the surety.   The rule applicable to fire and

life insurance is the rule by analogy most applicable to a contract like these. 63 Fed. Rep. 48. (2) The bond sued on being analogous to a fire or life policy of isurance, when the plaintiff produced the bond, showed the loss and the delivery of the proofs of loss, he made out a prima facie case; other matters of defense were for defendant to show. Geib v. Ins. Co., 1 Dillon 443; Hester v. Ins. Co., 69 Mo. App. 186. Such other matters of defense were not specially pleaded by defendant as an examination of its answer, contained in respondent's additional abstract, will show.

ELLISON, J.—Plaintiff Hough is assignee of the Universal Savings & Loan Company. He was appointed and substituted as plaintiff after this action was brought. One Thomas Murray was in the loan company's employ as its secretary, and as such, gave bond with defendant, a New York corporation, as surety. The bond contained several obligations and conditions; among them, that the company stood as surety against any pecuniary loss to the loan company of money, securities or other property occasioned by "dishonesty" on the part of Murray which may "amount to larceny or embezzlement," committed during the period covered by the bond which might be discovered during that period, or within three months thereafter; or within three months after death, dismissal or retirement. It was provided that on discovery of such acts on part of Murray, the loan company should immediately give notice thereof in writing to the defendant; and within three months after such discovery furnish to the defendant such reasonable particulars and proofs of the correctness of the claim as the defendant "may think fit."

The bond also provided that the loan company, whenever required so to do, should afford to defendant every description of aid or assistance (not pecuniary) capable of being afforded by such company, for the purpose of prosecuting or

bringing to justice the employee for any criminal offense entailing loss upon the employer committed by Murray while in the loan company's employ.    The foregoing conditions and provisions were made conditions precedent to the right of the loan company to recover on the bond.

At the close of plaintiff's case, the defendant offered and the trial court refused a demurrer to the evidence.    The judgment was for plaintiff.

On July 21, 1896, the company discovered that Murray's accounts with it were not right.    On September 4 thereafter the company notified this defendant by letter that there was a "shortage" of $1,600 in his accounts and informed defendant that the "company is ready to furnish you the information required or demanded."    The defendant answered this under date of September 10, inclosing "claim blanks" and stating that if under the terms of the bond Murray had been guilty of larceny or embezzlement and a claim was to be made therefor, defendant wished certain matters and data stated in the claim and proofs.    Among other things so desired of the company was that defendant should "state upon what date Mr. Murray left your service; whether he resigned or was removed, and send us copies of any correspondence you have had with him touching his resignation or removal as well as copies of any correspondence you have had with him in relation to the items that may be embraced in any claim you may submit— both letters to and from him, and the particulars of any oral statements he may have made to you in relation thereto."

This letter was answered by the company on September 17 in which, referring to the whole of defendant's letter as to detail of statement, it was characterized as unreasonable, but stated that it was willing to make the necessary proof of "loss or deficit."

Defendant answered this letter on September 21 explaining that the demand as to detailed statement of loss was not

unreasonable and requesting that the company "oblige us with specific replies to the inquiries made in the fifth paragraph" of the letter of September 10, which were in relation to the particulars of any oral statements Murray may have made and which we have before quoted.

This letter was answered by the company on September 28, 1896, in which, among other things, it was said: "As you requested, we beg to answer your questions in the fifth paragraph of your letter of the 10th: first, Mr. Murray left the employ of the Universal Savings & Loan Company, July 1, 1896. He did not resign, neither was he removed. The time for which he was elected as secretary had expired, and when a meeting of board was held to elect a secretary a Mr. Ennis was elected in his stead; second, we had very little correspondence with Mr. Murray pertaining to his retirement from this position or the shortage in his accounts, as he seemed to be silent on this matter; third, we had a suretyship for Mr. Murray subsequent to June 1, 1896, issued by American Bonding & Trust Company, of Baltimore, and the amount of shortage during the month of June, or from June 1 up to time of his leaving the employ of the company, is $41.50."

It will be noticed that the company's letter of the seventeenth made no pretense of answer to the inquiries which defendant made in the fifth paragraph of its letter of September 10; and that its letter of September 28 answered all inquiries except as to oral statements made by Murray. In such circumstances defendant would, of course, suppose no such statements had been made. Yet it was shown by the evidence in plaintiff's behalf that about the middle of August, the company's principal officer, and who wrote the foregoing correspondence for the company, took Murray to his room in a hotel in St. Louis and there confronted him with the books and obtained from him important statements and admissions, including some pencil memoranda made then and there by

Murray on the books. These admissions bore directly on two different items which compose the major part of the company's loss. This officer testified that after getting Murray in the room he asked him to go over the books and explain them, calling his attention particularly to the entries of the two items just mentioned. He testified that "Murray looked through the books and said he could not explain it; he said they should not be there and said, 'You just tell Mr. Ennis to take these out.' Witness said to him, 'Well if that hadn't ought to be there you just write on the book here, just opposite this entry, to take it out, in your own handwriting,' and Murray did so while we were there in the room. Witness then said, 'If Mr. Ennis takes those entries out it will make you short that much.' Murray said, 'Well, if I am short I am short, that is all there is about it.' We were there about an hour, or two hours, looking through these books and talking about these entries, trying to adjust them, or trying to get Murray to show where it was not a defalcation; this was about nine or ten o'clock in the morning."

This testimony was introduced by plaintiff and was relied upon as material to the proof of its case. On cross-examination this officer admitted that he had not informed the defendant of this interview with Murray nor did he inform them of what Murray said and did at that time.

In our opinion the demurrer to the evidence should have been sustained. Here was a provision in the bond of this surety which required the loan company to furnish defendant with every reasonable particular in the proofs which defendant might think fit or necessary to demand; and should afford to defendant every description of aid and assistance capable of being afforded to it. These are contractual provisions deliberately adopted by the parties; and besides are reasonable and proper in themselves, as affording means of satisfaction and proper investigation to defendant, as well as in many in-

stances aiding it in settlement or adjustment with the default-
ing officer; to say nothing of assisting it in prosecuting and
bringing to justice those who had betrayed their trust and
thus rendering materially less their average risk of suretyship
in general.

Plaintiff, recognizing the force and fatal consequence of
the point just discussed, seeks to avoid it by the contention
that it was not an issue in the case since it was not raised by
defendant's answer, which was a general denial.   This posi-
tion is unsound; that is, it is untenable in the general way in
which plaintiff states the proposition.   Plaintiff cites in its
support the case of Hester v. Ins. Co., 69 Mo. App. 186.
That case is clearly against plaintiff's position.   An instruc-
tion in that case was so worded that it required plaintiff to
prove that the deceased had obeyed all of the provisions of the
policy and that "he did not violate any one thereof." In other
words, the instruction required the plaintiff to go over the
various terms of the policy and disprove in the first instance
any and all affirmative matter of defense therein contained;
for instance, that the deceased had not been intoxicated; that
he had abstained from bad habits; that he had not gone to war,
etc., etc.   But no one has ever thought of excusing a plain-
tiff from proving in the first instance those things which are
necessary to make out his case.   Among these are, of course,
those things which the contract requires him to do before he
can rightfully expect the defendant to pay his demand.   Ey-
erman v. Cemetery Ass'n, 61 Mo. 490; Moritz v. Larsen, 70
Wis. 569.   So in the Hester case, supra, Judge SMITH's opin-
ion recognizes and states that the plaintiff was bound to allege
and show the policy, the death of the assured, the giving of
*notice and the making proof thereof to the company.*   To
adopt plaintiff's suggestion, as made, would overturn all prece-

dent in this State and destroy the practice which has universally obtained in these cases.

But in view of the particular wording of the requirement for information from the company to defendant, viz.: such reasonable particulars of the correctness of the claim as the *defendant may think fit,* it would seem that it was incumbent upon defendant to require the company to furnish a statement of acts or oral statements of Murray, if any. This being true, it was such matter as it ought to have pleaded by answer, for it was not necessary to plaintiff's case unless required by defendant's demand, and if it had been required it should have been pleaded. But this difficulty is wholly avoided by the fact that it was required, but the answer thereto being such matter as was peculiarly within the knowledge of the company and was unknown to defendant, the latter, being thus in ignorance of the concealment, could not plead it. But *both the demand and concealment were shown in evidence by plaintiff himself, thus destroying his own case.* Defendant thereupon did all that it could be asked to do in such circumstances, viz.: demurred to plaintiff's case on the evidence. This was proper practice. The case of Folden v. Hendrick, 25 Mo. 411, is not applicable.

In cases of the nature just stated it can not be expected that a party will plead a vital matter of defense which has been concealed from him by his antagonist; and he can take advantage of its appearing in the plaintiff's evidence. Thus, for example, contributory negligence is matter of defense which must be set up by answer. But if it is not done and plaintiff shows it in making out his case, he fails in his case and a demurrer thereto will be sustained. Buesching v. Gaslight Co., 73 Mo. 219, 229; Milburn v. Railroad, 86 Mo. 104.

Under the foregoing views the judgment must be reversed and remanded. All concur.